# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JAMES H. SMITH,

        Petitioner,

                                 **CASE NO. 2:16-CV-533**

v.                             **JUDGE GEORGE C. SMITH**

                                 **Magistrate Judge Elizabeth P. Deavers**

WARDEN, SOUTHEASTERN
CORRECTIONAL INSTITUTION,

        Respondent.

### OPINION AND ORDER

Petitioner, a state prisoner, brings the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* Respondent's *Return of Writ*, Petitioner's *Reply*, and the exhibits of the parties. For the reasons that follow, this action is hereby **DISMISSED**.

Petitioner's *Motion to Amend/Correct* (ECF No. 10), is **GRANTED**. Petitioner's *Motion to Add Affidavit* (ECF No. 14), is **DENIED,** as moot. Petitioner's *Motion for Judicial Notice* (ECF No. 12), is **GRANTED IN PART AND DENIED IN PART.** Petitioner's unopposed *Motion to Expand/Complete Record Pursuant to Rule 5 of the Rules governing Section 2254 Cases* (ECF No. 23), to include a copy of the transcripts of pre-trial proceedings, is **GRANTED**. Petitioner's request for a certificate of appealability is **GRANTED**.

### Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> James H. Smith is appealing from several convictions for aggravated robbery, kidnapping and other related felonies and

specifications. As a result of his conviction, he was ordered to be incarcerated for a total of 84 years.

Counsel for Smith has assigned ten errors for our consideration:

First Assignment of Error: The trial court improperly exposed the jury to inadmissible hearsay testimony in violation of Evid.R. 801.

Second Assignment of Error: The trial court erred in admitting statements given by out-of-court declarants in violation of the Confrontation Clauses of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

Third Assignment of Error: The trial court erred in allowing stipulations of the parties that violated Appellant's right to confrontation under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution without first ensuring Appellant understood his right of confrontation and thereafter knowingly, intelligently and voluntarily waived that right.

Fourth Assignment of Error: Counsel for Appellant fell short of providing adequate representation and as a result Appellant's right to effective assistance of counsel, was violated.

Fifth Assignment of Error: The trial court erred when it allowed the jury to receive articles and information during deliberations that had not been admitted into evidence at trial in violation of Appellant's statutory and constitutional due process rights.

Sixth Assignment of Error: The trial court erred in its finding that the firearm specifications associated with each robbery had to all be served consecutively.

Seventh Assignment of Error: The cumulative effect of the errors advanced in this brief resulted [in] a violation of Appellant's right to a fair trial and thus entitles him to a new trial.

Eighth Assignment of Error: The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain the convictions.

Ninth Assignment of Error: The judgment of the trial court was against the manifest weight of the evidence.

Tenth Assignment of Error: The trial court erred by failing to merge Appellant's convictions at sentencing in violation of R.C. 2941.25(A), the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

Smith was indicted on 34 counts of aggravated robbery, 34 counts of robbery, 54 counts of kidnapping, and 19 counts of having a weapon under disability and one count of tampering with evidence. Most of the charges carried repeat violent offender ("RVO") specifications and three-year firearm specifications.

The State of Ohio narrowed the charges somewhat before the trial started, dismissing the robbery charges which were uniformly lesser included offenses of the aggravated robbery charges. The State also dismissed the tampering with evidence charge and the charges related to the armed robbery of one Chipotle restaurant. This left charges involving 18 separate incidents.

The RVO specifications and the weapon under disability charges were tried to the trial court judge in order to avoid exposing jurors to details of Smith's prior felony record.

There does not seem to be serious debate that the 18 sets of robberies occurred, at least based upon the record before us on appeal. The sole issue at the trial was whether James H. Smith was the robber. The jury and the trial court judge were convinced beyond a reasonable doubt that he was in several instances.

Unknown to the jury was the fact that Smith's trial counsel was struggling with a series of allegations that counsel had been involved in a series of rapes. Eventually, trial counsel was convicted of rape charges, sentenced and disbarred. Appellate counsel alleges that trial counsel's personal problems affected the representation Smith received at trial and deprived Smith of effective assistance of trial counsel. We will address the assignments of error which touch on that allegation first.

The State and Smith's trial counsel reached an agreement about a wide range of stipulations about the underlying facts of the armed robberies. From the perspective of defense counsel, this minimized the exposure of the jury to the human terror and suffering caused by the robber. From a different perspective, the stipulations made it easier for the State to convict Smith of the robberies and cause Smith to receive basically a life sentence of imprisonment.

*State v. Smith*, No. 13AP-973, 2015 WL 872753, at *1-3 (Ohio App. 10th Dist. March 3, 2015).

On March 3, 2015, the appellate court affirmed the judgment of the trial court. *Id*. On June 24, 2015, the Ohio Supreme Court declined jurisdiction of the appeal. *State v. Smith*, 142 Ohio St.3d 1520 (Ohio 2015).

On June 13, 2016, Petitioner filed the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the trial court improperly exposed the jury to inadmissible hearsay (ground A); that he was convicted in violation of the Confrontation Clause (ground B); that the trial court improperly permitted certain stipulations by the parties that violated the Confrontation Clause, without determining whether Petitioner knowingly, intelligently, and voluntarily waived that right (ground C); that he was denied the effective assistance of counsel based on his attorney's agreement to enter into stipulations regarding the elements of the robbery and kidnapping charges and Sprint phone records; failure to file a motion to sever the charges related to the July 12, 2012, Red Robin robbery (ground D); that he was denied due process due to the admission of certain articles and information during jury deliberations that had not been admitted at trial (ground E); that the trial court improperly imposed consecutive terms of incarceration on Petitioner's firearm specifications (ground F); that he was denied a fair trial based on cumulative error (ground G); that the evidence was constitutionally insufficient to sustain his convictions (ground H); and that his convictions on aggravated robbery and kidnapping should have been merged at sentencing (ground I). It is the position of the Respondent that Petitioner's claim should be dismissed as procedurally defaulted or without merit.

**Motion to Amend**

Petitioner has filed a motion to amend the *Petition* to include additional facts and arguments from his state appellate brief in support of habeas corpus grounds A and B, in which he asserts that the trial court improperly exposed the jury to inadmissible hearsay and erred in admitting certain testimony, in violation of the Confrontation Clause. Petitioner indicates that these claims are related. He requests the Court to conduct a *de novo* review of ground B. Petitioner also provides additional argument in support of ground D, in which he asserts that he was denied effective assistance of trial counsel.

Respondent opposes Petitioner's motion to amend. *See Respondent's Memorandum in Opposition to Petitioner's Motion for Leave to Amend Petition.* (ECF No. 19.) According to the Respondent, the one-year statute of limitations provided in 28 U.S.C. § 2244(d) bars amendment of the *Petition*, and any amendment would, in any event, be futile. Respondent additionally contends that the Court should bar any amendment of the *Petition,* as Petitioner could have included these facts in support in his initial filing and may provide additional legal arguments through the filing of a *Traverse. Id.* However, Respondent also maintains that the Court should dismiss Petitioner's claims for failure to comply with Rule 2(c) of the Rules Governing Section 2254 Cases, which requires that a pleader provide sufficient facts in support of his claims. *Return of Writ* (ECF No. 7, PageID# 32-34.)

"Dismissal under Habeas Rule 2(c) is appropriate in cases . . . where the petition and accompanying documents, as well as petitioner's additional pleadings and notices, contain 'so many unintelligible and conclusory allegations and statements' that it is impossible for the Court to determine 'the exact errors of fact or law' that have been raised for adjudication or even whether petitioner's stated grounds for relief pertain to anything that occurred in the challenged

[] criminal case." *Rice v. Warden*, No. 1:14-cv-732, 2015 WL 5299421, at *4 (S.D. Ohio Sept. 9, 2015) (citing *Tinsley v. Beasley*, No.5:11cv13289, 2011 WL 3497306, at *2 (E.D. Mich. Aug. 10, 2011) (other citations omitted)). Despite Respondent's argument to the contrary, such are not the circumstances here. Moreover, the Court liberally construes the allegations of a *pro se* petitioner, and holds a *pro se* prisoner's complaint to less stringent standards than formal pleadings drafted by lawyers. *See Koon v. Warden, Madison Correctional Institution*, No. 2:16-cv-00950, 2017 WL 1106372, at *7 (S.D. Ohio March 24, 2017) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

It is clear from the face of the *Petition* that Petitioner intended to raise the same issues he presented to the state appellate court. Respondent will not be prejudiced if Petitioner is permitted to amend his *Petition* to include the factual bases for his claims inasmuch as he already presented them to the state appellate court. Moreover, it does not appear, as the Respondent suggests, that Petitioner seeks to add any new claims to the *Petition* that he did not previously raise. Rather, Petitioner has merely clarified the facts and arguments in his *Petition* with material he presented in his state appellate brief. Therefore, because has added only additional core facts that relate to his original position, the statute of limitations does not bar amendment of the petition. *See Hill v. Mitchell*, 842 F.3d 910, 922 (6th Cir. 2016) ("[W]hen a prisoner files an original petition within the one-year deadline, and later presents new claims in an amended petition filed after the deadline passes, the new claims relate back to the date of the original petition if the new claims share a 'common core of operative facts' with the original petition.'") (citing *Cowan v. Stovall*, 645 F.3d 815, 818 (6th Cir. 2011) (quoting *Mayle v. Felix,* 545 U.S. 644, 650 (2005)).

Therefore, Petitioner's *Motion to Amend/Correct* (ECF No. 10), is **GRANTED**. The Court considers Petitioner's *Amended Petition* in its analysis of his claims.

### Motion to Add Affidavit

Petitioner has filed a motion to include an Affidavit from Kerry Donahue, dated November 28, 2016, who was appointed as replacement appellate counsel on Petitioner's behalf and filed a supplemental brief in the state appellate court. Donahue indicates that he neglected to send a copy of Petitioner's Reply to the State's brief "until very recently" and Petitioner therefore "did not get the opportunity to review the important arguments made therein." (ECF No. 14, PageID# 1770.) Petitioner seeks to submit Donahue's affidavit in support of his motion to amend the *Petition*, so as to establish that he has acted diligently and in good faith. *Motion to Add Affidavit to Motion For Leave of Court to Amend Petitioner's U.S.C. 2254 Habeas Corpus Petition* (ECF No. 14.) Respondent opposes Petitioner's request. Respondent's *Memorandum in Opposition to Petitioner's Motion to Add Affidavit to Motion for Leave of Court to Amend Petitioner's Habeas Corpus Petition* (ECF No. 21.) This Court, however, has now granted Petitioner's motion to amend. Therefore, the *Motion to Add Affidavit* (ECF No. 14) is **DENIED, AS MOOT**.

### Motion for Judicial Notice

Petitioner requests the Court to take judicial notice that his defense counsel, Attorney Javier Armengau, was indicted and subsequently convicted in the Franklin County Court of Common Pleas on charges of rape, kidnapping, sexual battery, gross sexual imposition, and public indecency, and disbarred as a result. *Motion for Judicial Notice* (ECF No. 12.) Petitioner has attached copies of newspaper articles regarding the charges against Armengau, and a copy of the trial court's *Judgment Entry* of sentence. (PageID# 1760-65.) Petitioner argues that these

facts support his claim of the denial of the effective assistance of counsel. Petitioner alleges that his attorney's criminal convictions reflect counsel's lack of moral character and support his claim that counsel sought to curry favor with the prosecution by entering into certain stipulations, at Petitioner's expense.

Respondent opposes Petitioner's request. It is the position of the Respondent that Petitioner's request will not assist him in establishing his claims, and that the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011) (a federal court must limit its review under 28 U.S.C. § 2254(d)(1) of a claim that the state court adjudicated on the merits to the record that presented to the state appellate court), bars expansion of the record. *Respondent's Memorandum In Opposition to Petitioner's Motion for Judicial Notice* (ECF No. 20.) However, Petitioner does not seek to expand the record in this case.

Under Rule 201 of the Federal Rules of Evidence, a district court may take judicial notice at any stage of the proceeding, whether or not requested by the parties, of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201, Federal Rules of Evidence. "[J]udicial notice is available only for 'adjudicative facts,' or the 'facts of the particular case,' as opposed to ... facts 'which have relevance to legal reasoning' . . . . Thus, judicial notice is generally not the appropriate means to establish the legal principles governing the case." *Wingeart v. Warren*, No. 05-74144, 2011 WL 1085032, at *1 (E.D. Mich. March 23, 2011) (quoting *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 350 (6th Cir. 2002)). Additionally, "federal courts may take judicial notice of proceedings in other courts of record" and of judicial decisions. *Id.* (citing *Granader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969); *United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir.

1977); *Don Lee Distributor, Inc. v.* NLRB, 145 F.3d 834, 841 n.5 (6th Cir. 1998)); *see also In re Montana*ri, No. 12-33189, 2015 WL 603874, at *1 n.3 (E.D. Tenn. Feb. 12, 2015) (taking judicial notice of the undisputed facts and documents of record in the defendants' bankruptcy case). "The purpose of judicial notice is to make a court's acceptance of a well-known or undisputable fact more convenient." *Wingeart*, 2011 WL 1085032, at *1 (citing *United States v. Bari*, 599 F.3d 176, 180 (2nd Cir. 2010)).

The Court takes judicial notice of the proceedings in the Ohio Court of Appeals. In those proceedings, the court of appeals noted, in its dismissal of Petitioner's claim for ineffective assistance of trial counsel, that unbeknownst to the jury, defense counsel had been struggling with a series of rape charges that had been filed against him, and upon which he was ultimately convicted, sentenced, and disbarred. Even given these facts, the appellate court denied Petitioner's claim, concluding that Petitioner had failed to establish prejudice under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, the state appellate court has already recognized, and included as a factual finding, that defense counsel faced pending criminal charges during trial, upon which he has been subsequently convicted and disbarred. Therefore, to the extent necessary, the Court may take judicial notice of these facts. Nonetheless, judicial notice is in essence unnecessary given that the matters are part of the record in this case.

Petitioner's *Motion for Judicial Notice* (ECF No. 12) therefore is **GRANTED IN PART AND DENIED**.

## Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982 (*per curiam* ) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman* v. *Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do

so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case -- that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

As to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used

to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

**Ground B - Confrontation**

In ground B, Petitioner asserts that he was convicted in violation of the Confrontation Clause. Petitioner properly raised this claim on direct appeal; however, it is the position of the Respondent that Petitioner nonetheless has procedurally defaulted this claim by failing to provide sufficient facts in support on appeal to the Ohio Supreme Court, thereby "abandoning" the issue. *Return of Writ* (ECF No. 7, PageID# 36.)

"To avoid procedural default, the petitioner must 'exhaust' all state-court remedies." *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015) (citing *Carter v. Mitchell*, 693 F.3d 555, 563–64 (6th Cir. 2012)). This requires "fair presentation" of the federal claim to the state supreme court. *Id.* (citing *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir. 2011); *O'Sullivan* v. *Boerckel,* 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). To fairly present a federal claim, a state prisoner must present the state courts with "both the legal and factual basis" for his claim. *Id*. (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

In his *Memorandum in Support of Jurisdiction* in the Ohio Supreme Court, Petitioner asserted that the trial court had erroneously allowed stipulations by the parties that violated his right to confrontation under the Sixth Amendment. *Proposition of Law Three* (ECF No. 7-1, PageID# 455.) Petitioner argued in support of this claim that the trial court had improperly permitted admission of certain hearsay statements that he had referenced in his first proposition of law – *i.e.,* statements by police officers regarding the identification of the suspect and purported background evidentiary matters – which, he contended, violated the Confrontation Clause. (PageID# 458-59.) Petitioner also attached a copy of the appellate court's decision rejecting this claim. (PageID# 469.) Petitioner thereby asserted the same claim, in reference to the same statements he had complained of on direct appeal. *See Gentry v. Sinclair*, 705 F.3d 884, 897-98 (9th Cir. 2013) (a federal claim may be fairly presented if it is raised in an accompanying brief or another similar document filed with the court) (citing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). "The 'failure to make every factual argument to support [a] claim does not constitute a failure to exhaust.'" *Sutton v. Bell*, 683 F.Supp.2d 640, 666 (E.D. Tenn. Jan. 22, 2010) (citing *Patterson v. Cuyler*, 729 F.2d 925, 929 (3rd Cir. 1984); *Picard,* 404 U.S. 270)). This Court therefore concludes that Petitioner has sufficiently preserved this same claim for federal habeas corpus review.

**Ground C – Uninvited Error / Stipulations**

In ground C, Petitioner asserts that the trial court improperly permitted stipulations by the parties that violated his right to confront the witnesses against him without first determining that Petitioner knowingly and intelligently, and voluntarily, waived that right. Petitioner raised this

same claim on direct appeal;[1] however, the state appellate court rejected the claim on the basis of "invited error," due to Petitioner's agreement to the stipulated facts at the time of trial:

> The third assignment of error argues that stipulations in general constitute a denial to a criminal defendant of the right to confront witnesses. We do not see this as being so. Stipulations reduce the trial to a trying of key issues, not an analysis of collateral issues. Stipulations can be to the benefit of all involved and served as a potential benefit to this defendant. Further, this issue can be classified as falling within the invited error doctrine which prohibits a party from being "permitted to take advantage of an error which he himself invited or induced the trial court to make." *Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943); *State v. Jones*, 10th Dist. No. 12AP–1091, 2014–Ohio–674, ¶ 22.

> The third assignment of error is overruled.

*State v. Smith*, 2015 WL 872753, at *5.

Thus, Petitioner has waived this claim under the doctrine of invited error. *See Grant v. Brigano*, No. C-1-03-896, 2007 WL 2782742, at *8 (S.D. Ohio Sept. 24, 2007). Under the doctrine of invited error, Petitioner cannot raise a claim in federal habeas proceedings for an issue about which he explicitly consented in the state courts. *See Grant v. Brigano,* No. C-1-03-896, 2007 WL 2782742, at *7 (S.D. Ohio Sept. 24, 2007).

> The Sixth Circuit in *Fields v. Bagley*, 275 F.3d 478 (6th Cir.2001) explained the doctrine as follows:

>> The doctrine of "invited error" is a branch of the doctrine of waiver in which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside. *Harvis v. Roadway Express, Inc*., 923 F.2d 59, 61 (6th Cir. 1991). When a petitioner invites an error in the trial court, he is precluded

---

[1] Respondent argues that Petitioner failed to raise this same issue in the Ohio Court of Appeals. *Return of Writ* (ECF No. 7, PageID# 45.) This Court does not agree. Referring to federal law on the issue, Petitioner specifically argued that the trial court failed to determine whether he had knowingly waived his right to confront his accusers by consenting to stipulations. *Brief of Appellant* (ECF No. 7-1, PageID# 304.)

> from seeking habeas corpus relief for that error. *See Leverett v. Spears*, 877 F.2d 921, 924 (11th Cir. 1989); *Draughn v. Jabe,* 803 F.Supp. 70, 75 (E.D. Mich.1992).

> 275 F.3d 478, 485-86. In accordance with this doctrine, " '[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course.'" *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990). *See also L.S. v. Brika*, 416 F.3d 514, 525 (6th Cir. 2005) (counsel's decision to permit the judge to speak to jury in jury room was an invited error that did not result in prejudice to defendant), *cert. denied*, 2006 WL 387120 (U.S. Feb. 21, 2006).

*Id.*; *see also Young v. Larose*, No. 4:13-cv-220, 2015 WL 5233417, at *13 (N.D. Ohio Sept. 8, 2015) (citing *Fulcher v. Motley*, 444 F.3d 791, 798-99 (6th Cir. 2006) (other citations omitted) (concluding that the petitioner waived claim under doctrine of invited error).

Petitioner argues that the state appellate court did not enforce the procedural rule at issue, but denied the claim on the merits. *Traverse* (ECF No. 28, PageID# 1859.) This Court does not agree. A state appellate court's alternative ruling on the merits does not preclude enforcement of the procedural default. *See Skatzes v. Warden, Mansfield Correctional Institution*, No. 3:09-cv-289, 2017 WL 2374434, at *7-8 (S.D. Ohio June 1, 2017) (citing *Harris v. Reed*, 489 U.S. 255, 264 (1989); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000); *Wogenstahl v. Mitchell*, 668 F.3d 307, 327 (6th Cir. 2012); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003)).

Petitioner also claims that the state appellate court erroneously enforced the doctrine of invited error, because neither he nor his attorney signed the agreed-to stipulations, and he did not knowingly waive his right to confront his accusers. *Traverse* (ECF No. 28, PageID# 1860.) "Waiver of the right to confront one's accuser is evaluated according to the standards for waiving any constitutional right as enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and requires 'an intentional relinquishment or abandonment of a known right or privilege.'"

*Carter v. Sowders,* 5 F.3d 975, 980-812 (6th Cir. 1993). "It is true that a waiver cannot be based on statements made by a defendant's lawyer who has not first consulted with his or her client." *United States v. Marshall*, 248 F.3d 525, 535 (6th Cir. 2001) (citing *Carter*) (the defendant's absence from the courtroom constituted a knowing and voluntary waiver of his constitutional right to be present, where he offered no explanation for his absence and was present when the court announced the time at which court proceedings would resume the next day). However, "[w]aiver may also be implied from the defendant's conduct." *Id.* (citing *Finney v. Rothgerber*, 751 F.2d 858, 862 (6th Cir. 1985) (holding that despite the defendant's failure to expressly waive his presence, waiver was effected because "[i]t is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial . . . entertained any doubts about his right to be present at every stage of his trial.") (internal citation omitted). A majority of the Circuit Courts of Appeals to consider the issue have held that "'a defendant's attorney can waive his client's Sixth Amendment right so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.'" *United States v. Williams*, 632 F.3d 129, 133 (4th Cir. 2011) (citing *United States v. Cooper,* 243 F.3d 411, 418 (7th Cir. 2001); *Janosky v. St. Amand*, 594 F.3d 39, 48 (1st Cir. 2010); *United States v. Gamba*, 541 F.3d 895, 900 (9th Cir. 2008) ("defense counsel may waive an accused's constitutional rights as a part of trial strategy"); *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999); *United States v. Reveles*, 190 F.3d 678, 683 n.6 (5th Cir. 1999); *Hawkins v. Hannigan*, 185 F.3d 1146, 1155 (10th Cir. 1999)); *see also United States v. Cooper*, 243 F.3d 411, 418 (7th Cir. 2001) (same) (citing *United States v. Reveles*, 190 F.3d 678, 683 n.6 (5th Cir.

1999); *United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999); *Hawkins v. Hannigan*, 185 F.3d 1146, 1155–56 (10th Cir. 1999)).

In *Carter,* 5 F.3d at 975, to which Petitioner refers, the defendant was unrepresented by counsel and not present during a deposition of a critical witness, who later introduced as evidence against him at trial. "The taping of the deposition was, for all practical purposes, the only time 'evidence on the defendant's guilt' was taken." *Id.* at 979. Carter's attorney thereafter objected to admission of the deposition, arguing that it violated Carter's right to confront his accuser. *Id.* at 978. The United States Court of Appeals for the Sixth Circuit granted the petition for a writ of habeas corpus, as Carter had not been had not been notified about the deposition or consented to the waiver of his rights under the Confrontation Clause. *Id.* at 981-82.

Here, however, unlike the scenario in *Carter*, Petitioner's attorney agreed to various stipulations regarding undisputed facts that did not affect the theory of the defense, in open court, on the record, and in the Petitioner's presence. *Trial Transcript, Volume I* (ECF No. 7-2, PageID# 516-26); *see Brief of Appellant* (ECF No. 7-1, PageID# 303-04) (18 stipulations were admitted as joint Exhibits 1-20). The Sixth Circuit has stated that a waiver may be implied and need not be express, so long as evidence in the record supports that implication. *Carter*, 5 F.3d at 981. The record in this case supports the appellate court's conclusion that Petitioner consented to counsel's stipulations. Under these circumstances, the Court concludes that the state appellate court did not erroneously enforce doctrine of invited error. Petitioner therefore has procedurally defaulted ground C. Further, Petitioner has failed to establish cause for his procedural default. Moreover, the record does not indicate that Petitioner can establish that he is actually innocent so as to permit a merits review of this claim. *Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005).

Ground C is waived.

## Merits

### Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ─── U.S. ────, ────, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that statecourt decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 562 U.S. 86 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer,* 588 F.3d 328, 341 (6th Cir. 2009)

(" '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 Fed.Appx. 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182.

### Grounds A and B

In ground A, Petitioner asserts that the trial court improperly admitted hearsay evidence against him. Specifically, Petitioner complains that Officer Stephen Asch testified that he responded to a robbery in progress, got a description of a black male who had robbed the McDonald's at gunpoint, and spoke a store manager who told him that a man wearing a ski mask stuck a gun in her side and forced her into the office. *See Brief of Appellant* (ECF No. 7-1, PageID# 286); *Motion to Amend/Correct Petition for Writ of Habeas Corpus* (ECF No. 10, PageID# 1729.). Petitioner also complains that Detective Kenneth Kirby testified that he obtained information that the July 12, 2013, Red Robin robbery "was similar to all the other restaurant robberies that we were investigating at the time, and that this possibly could be the suspect that was responsible for the other ones." *Brief of Appellant* (ECF No. 7-1, PageID# 288.) It "[l]ed us to believe that this was the – what we considered to be the 'Restaurant-Closer Robber.'" *Id.* Finally, Petitioner complains that Detective Tom Clark testified that he (Clark)

listened to telephone calls made between February and July from a telephone number that Petitioner had indicated belonged to him, referring to the female who answered the phone as "Perri." *Trial Transcript, Volume V* (ECF No. 7-8, PageID# 1207-08.) In ground B, Petitioner asserts that admission of the foregoing testimony violated the Confrontation Clause.

To the extent that Petitioner here asserts an alleged violation of state law or state evidentiary rules, that assertion alone fails to provide a basis for federal habeas corpus relief. 28 U.S.C. § 2254(a). As a general matter, errors of state law, especially the improper admission of evidence, do not support a writ of habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). Instead, to be entitled to habeas relief, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles*, 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Stated differently, " '[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). Petitioner cannot meet this burden here.

The state appellate court denied Petitioner's claim as follows:

> Smith argues that the trial court improperly exposed the jury to inadmissible hearsay that the court allowed as background information. "[T]rial court has broad discretion in admission and exclusion of evidence, and unless it has clearly abused its discretion and defendant has been materially prejudiced thereby." *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). Such hearsay evidence must also meet the standard provided by Evid.R. 403(A). *State v. Faris*, 10th Dist. No. 93APA08–1211 (Mar. 24, 1994). Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A statement that goes to an

element of the offense poses a danger of being highly prejudicial. *Faris; see also State v. Blevins*, 36 Ohio App.3d 147, 521 N.E.2d 1105 (10th Dist.1987).

The statements being questioned on appeal by and large were background statements about the facts of the robberies. The fact that the robberies occurred was never in serious dispute. No prejudicial error could be found by this court based upon statements that merely showed a robbery or robberies occurred when that issue was not in serious debate.

For admission of the statements to be prejudicial error, the statements had to go to identification of Smith as the robber. Further, the trial court judge limited the jury's consideration of any such statements to background, *i.e.,* that a robbery occurred.

We do not find prejudicial error based upon the statements admitted. The first assignment of error is overruled.

*State v. Smith*, 2015 WL 872753, at *4-5. Ground A therefore fails to provide a basis for relief.

Petitioner also asserts, however, that admission of the statements referred to violated the Confrontation Clause. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v. Roberts*, 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court in *Crawford* held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity to cross examine the witness. Under *Crawford*, "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Id*. at 1366. The Supreme Court, however, left the application of *Roberts* to cases involving nontestimonial hearsay untouched:

> ["Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying Crawford have observed,

>> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements....

>> [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico*, 414 F.Supp.2d 744, 773 (E.D.Mich. 2006) (quoting *United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005)); *Horton v. Allen*, 370 F.3d 75, 83–84 (1st Cir. 2004). The Supreme Court declined to define a comprehensive definition of the term "testimonial," but indicated, at a minimum, the term includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68. A casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements within the protection of the Sixth Amendment. *Id*. at 51–55. In the Sixth Circuit, the test for determining whether a statement is deemed testimonial within the meaning of *Crawford* is:

> ... whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). "[A]dmission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause.... [T]he statement must be used as hearsay-- in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005). Moreover, "[a] violation of the Confrontation Clause does not warrant automatic reversal but, rather, is subject to harmless-error analysis." *Blackston v. Rapelje*, 780 F.3d 340, 359 (6th Cir. 2015) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 681-82 (1986)).

Applying these concepts, the Court concludes that the Confrontation Clause does not bar admission of the complained of testimony and that the state court's did not unreasonably apply or contravene federal law or base its decision on an unreasonable determination of the facts in light of the evidence presented in rejecting Petitioner's federal claim. 28 U.S.C. § 2254(d). Clark's statement that he had listened to telephone calls during which time a man referred to the woman answering the phone as "Perri" does not constitute a testimonial statement within the meaning of *Crawford.* *See United States v. Thurman*, 915 F. Supp. 2d 836, 855 (W.D. Ky. Jan. 7, 2013) (recorded telephone conversations from jailhouse inmate to the defendant are non-testimonial and do not implicate the Confrontation Clause); *McCray v. Curtin*, No. 2:08-cv-15166, 2013 WL 4530510, at *7 (E.D. Mich. Aug. 27, 2013) (recorded conversations between the petitioner and a prison inmate are non-testimonial and do not implicate the Confrontation Clause) (citing *Davis*, 547 U.S. at 825). "Remarks made to family members or acquaintances are generally considered nontestimonial." *Id.* (citing *Crawford*, 541 U.S. at 51-52; *Desai v. Booker*, 538 F.3d 424, 427 (6th Cir. 2008)). Likewise, the complained of statements by Officer Asch and Detective Kirby neither violated the Confrontation Clause nor prejudiced the Petitioner, particularly in view of the other evidence presented. *See Brief of Appellant* (ECF No. 7-1,

PageID# 286); *Traverse* (ECF No. 10, PageID# 1729.). "[T]estimony that does not reveal any specific statement. . . and merely provides background information regarding the course of investigation does not violate the Confrontation Clause." *United States v. Pugh*, 273 F. App'x 449, 456 (6th Cir. 2008) (citing *United States v. Cromer*, 389 F.3d 662, 676-77 (6th Cir. 2004) (concluding that testimony by police officer that he "had information" about drug dealing that occurred at a particular address permissible as background information, even though jury could link that address to the defendant)). Detective Kirby's statement that he believed that the perpetrator of the Red Robbin robbery had also committed prior robberies in the area, in view of the similar *modus operandi* of the offenses, did not constitute impermissible hearsay. Moreover, the trial court instructed the jury that the statements were "[F]or background only, ladies and gentlemen, so you can understand what the detective did. Don't use it as evidence of whether or not Mr. Smith committed the robbery." *Trial Transcript, Volume VI* (ECF No. 7-7, PageID# 1422.)

"In determining whether a habeas petitioner is entitled to relief because of a Confrontation Clause violation, we examine 'whether the error had a substantial and injurious effect or influence in determining the jury's verdict.'" *Sykes v. Wolfenbarger*, 448 Fed.Appx. 563, 569 (6th Cir. Nov. 21, 2011) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). The challenged evidence constituted an insignificant part of the evidence against Petitioner. Moreover, defense counsel stipulated to the same information provided by Officer Asch regarding the May 7, 2012, robbery of the McDonald's on 3554 South High Street, and such evidence was merely cumulative. *See Transcript, Volume III* (ECF No. 7-4, PageID# 846-47.)

Ground C fails to provide a basis for relief.

## Ground D

In ground D, Petitioner asserts that he was denied the effective assistance of trial counsel, because his attorney agreed to multiple stipulations that relieved the State of its burden of proof; suffered a conflict of interest in view of the pending criminal charges against him; failed to interview witnesses or prepare for trial; improperly agreed to the authentication of Sprint telephone records; failed to object to Detective Clark's qualification as an expert in cell phone tower technology; failed to file a motion for judgment of acquittal on the Golden Corral robbery and the Red Robin robbery; failed to pursue meaningful plea negotiations; failed to file a motion to sever the charges related to the Red Robin robbery from the other charges against him; failed to object to admission of State's Exhibit D2, as containing information not presented at trial; and failed to review a disk containing cellular telephone record information prior to its admission into evidence.

The state appellate court rejected Petitioner's claim of the denial of the effective assistance of trial counsel as follows:

> The standards to be applied in determining if a criminal defendant has been denied effective assistance of counsel are set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Four principle holdings are contained in the case:
>
> 1. The Sixth Amendment right to counsel is the right to the effective assistance of counsel, and the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> 2. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

3. The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct fall within the wide range of reasonable professional assistance.

4. With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.

The *Strickland* standards were adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989) (An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment). The application to this case of the requirement of the *Strickland* case that an appellate court must find the outcome of the trial would have been different if defense counsel had conducted the trial differently leads us to overrule the fourth assignment of error.

The evidence that Smith was involved in a series of armed robberies was overwhelming. We do not find it necessary to set forth all the evidence here, as to the robberies for which Smith was convicted, but note that Smith was arrested while fleeing from the last robbery wearing the clothes he had worn in several of the robberies and carrying the firearm he had used in several of the robberies. The robberies had a strikingly consistent method of operation, namely the robbery of a restaurant at or after closing time. The employees, forced at gunpoint to assist the robber, were handled in similar ways. The surveillance tapes of several of the robberies revealed other striking similarities. Really the only question was whether Smith would be convicted of some robbery charges following a longer trial or a shorter trial. We note, in

addition, that the jury found Smith not guilty of six of the robbery incidents as a result of trial counsel's representation.

The fourth assignment of error is overruled.

*State v. Smith*, 2015 WL 872753, at *2-3.

Preliminarily, Petitioner contends that the Court should conduct a *de novo* review, because the state appellate court failed to apply the appropriate standard of review for determining whether he had established prejudice, as set forth in *Strickland*. *Traverse* (ECF No. 28, PageID# 1862-63.) As noted above, the state appellate court explicitly set forth the correct standard for assessing prejudice in its initial analysis of Petitioner's claim of the denial of the effective assistance of counsel. However, the appellate court later indicated that application of *Strickland* required it to find that the outcome of the trial would have been different, had counsel conducted the trial differently, and overruled Petitioner's claim. The Supreme Court has noted that "'the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest of cases.'" *Wright v. Burt*, 665 Fed.Appx. 403, 409 (6th Cir. 2016) (citing *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011)). However, "[b]ecause the state court articulated the correct standard when it began its analysis, and because this case is not one of those 'rare' situations in which the 'slight' difference between the standards matters," and the Court remains unconvinced that the record indicates that the state court's decision contravened clearly established federal law on this basis *See id.* (citation omitted). "After all, this Court must apply a highly deferential standard of review, giving the state court decision the benefit of the doubt and presuming that it knew and followed the law." *Gosnell v. Hodge*, No. 2:07-cv-130, 2010 WL 3521748, at *5 (E.D. Tenn. Sept. 7, 2010) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (concluding that the state court did not repudiate the governing rule in *Strickland* by its omission of the words "reasonable probability" from its

recitation of the prejudice test). *But see Vasquez v. Bradshaw*, 345 Fed.Appx. 104, 110-11 (6th Cir. Sept. 2, 2009) (conducting a *de novo* review, when Ohio Court of Appeals repeatedly referred to out-come determinative test as standard to be applied under *Strickland*). In any event, and exercising the utmost of caution, the Court proceeds to analyze the merits of this claim.

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness." *Poole v. MacLaren*, No. 12–1705, 547 F. App'x 749, 2013 WL 6284355, at *5 (6th Cir. Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland,* 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Poole,* 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The

> standards created by *Strickland* and § 2254(d) are both 'highly
> deferential,' *id*., at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521
> U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and
> when the two apply in tandem, review is 'doubly' so, *Knowles,* 556
> U.S., at 123, 129 S.Ct., at 1420. The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial.
> 556 U.S., at 123 [129 S.Ct., at 1420]. Federal habeas courts must
> guard against the danger of equating unreasonableness under
> Strickland with unreasonableness under § 2254(d). When §
> 2254(d) applies, the question is not whether counsel's actions were
> reasonable. The question is whether there is any reasonable
> argument that counsel satisfied *Strickland* 's deferential standard."

*Premo v. Moore*, 562 U.S. 115, 122-23 (2011). "The pivotal question is whether the state court's

application of the *Strickland* standard was unreasonable. This is different from asking whether

defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101.

Where a claim of ineffective assistance arises from the plea bargaining stage of criminal

proceedings, "the second part of the *Strickland* analysis, *i.e.*, the 'prejudice' prong, 'focuses on

whether counsel's constitutionally ineffective performance affected the outcome of the plea

process." *Sawaf v. United States*, 570 F. App'x 544, 547 (6th Cir. 2014) (citing *Hill v. Lockhart*,

474 U.S. 52, 59 (1985); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S.

133, 146-47 (2012); *Fitzpatrick v. Robinson*, 723 F.3d 624, 634 (6th Cir. 2013); *Cauthern v.

Colson*, 736 F.3d 465, 483 (6th Cir. 2013)). The Petitioner must establish that,

> but for the ineffective advice of counsel there is a reasonable
> probability that the plea offer would have been presented to the
> court (*i.e.*, that the defendant would have accepted the plea and the
> prosecution would not have withdrawn it in light of intervening
> circumstances), that the court would have accepted its terms, and
> that the conviction or sentence, or both, under the offer's terms
> would have been less severe than under the judgment and sentence
> that in fact were imposed.

*Lafler*, 566 U.S. at 164. When a state prisoner asks a federal court to set aside a sentence due to

ineffective assistance of counsel during plea bargaining, this Court must apply a "doubly

deferential" standard of review that gives both the state court and the defense attorney the benefit of the doubt. *Marsh v. Bradshaw*, No. 4:14CV2206, 2017 WL 68514, at *10 (N.D. Ohio Jan. 6, 2017) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Pinholster*, 563 U.S. at 188).

The record reflects that the parties discussed the status of plea negotiations in court and in the presence of the Petitioner just prior to the start of trial. The prosecutor indicated that the lowest sentence he would consider in terms of a potential plea agreement would be a jointly recommended sentence of 27 years in prison. *Trial Transcript, Volume I* (ECF No. 7-2, PageID# 533.) Defense counsel stated, however, that he had discussed the issue with Petitioner, including the potential sentence Petitioner faced, but Petitioner had no interest in entertaining a guilty plea.

> COURT: Mr. Armengau, have you had an opportunity to go over those range of numbers on sentencing, the rather heavy sentence if he loses on anything, and, obviously, that's stacked potentially a lot, if 18 charges got proven?
>
> MR. ARMENGAU: Yeah. I did not share with James this morning that the offer was 27 years on the joint rec. He and I discussed before, and certainly we've been in court before and discussed. . . . So he is aware of what the magnitude is of potential convictions, and, frankly, the amount of charges – I mean for lack of a better term, it's insane. So, you know, that is problematic.
>
> I just know from our discussions before and, again, just talking about one conviction or two convictions, you know, at the time there was nothing even in the 20-year range that was appealing to him. He's been in for some time.
>
> . . . [T]here's just no, you know, there's no potential light number that we can come to. So the offer this morning is 27 years, you know, but nothing in my discussions with James have led me to believe that that would be up for consideration.

(PageID# 534-35.) Further, the trial court thereafter directly advised the Petitioner to consider the State's plea offer of 27 years, and to inform counsel if he changed his mind and wanted to negotiate a plea agreement.

COURT: Mr. Smith, I'm not going to take time now to have you talk any more to Mr. Armengau about a potential plea. You have time during this trial to think about it as you watch the evidence come in. I don't know how long the state's 27-year offer will lay on the table, but that's such a long offer that I assume it will be there for a while.

If you decide that you want to negotiate toward maybe pleading guilty to something in this case, tell Mr. Armengau, and we'll make sure you guys have time to talk privately, and then Mr. Armengau and you have time to talk to the prosecutors. Otherwise, we'll assume that you just simply want to go to trial.

But you're facing a lot of time. If you want to at some point pull the plug and say, Okay, I'll take the deal, we'll give you time to figure out what that deal is and so forth, okay?

DEFENDANT: (Nods yes.)

COURT: I assume, gentlemen, that at least for the first few days of trial, the 27 offer stays on the table?

MR. ZEYEN: Yes, sir.

(PageID# 534-35.) Thus, the trial court explicitly advised Petitioner that the State's plea offer of 27 years would remain open for at least a few days, that he faced a substantial prison term, and that, should he change his mind, he needed to so advise the Court or his attorney. Nonetheless, nothing in the record indicates that Petitioner ever expressed an interest in pleading guilty. "[A] lawyer must not 'override his client's desire ... to plead not guilty.'" *Marsh v. Bradshaw*, No. 4:14-cv-2206, 2017 WL 68514, at *14 (quoting *Brookhart v. Janis*, 384 U.S. 1, 7–8 (1966); *see also Florida v. Nixon*, 543 U.S. 175, 187 (2004) (A defendant has the "'ultimate authority'" to decide whether to "exercise or waiv[e] ... basic trial rights," such a whether to plead guilty.") (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). In view of this record, Petitioner has failed to establish that, but for the ineffective performance, he would have entertained a guilty plea.

Moreover, decisions regarding what evidence to present and whether to call certain witnesses "are generally presumed to be a matter of trial strategy." *Parker v. Curtin*, No. 09-cv-13329, 2010 WL 4940011, at *4 (E.D. Mich. Nov. 30, 2010) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Marion v. Woods*, 663 Fed.Appx. 378, 384 (6th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). Petitioner does not indicate, and the record does not reflect, the nature of any further investigation that would have assisted the defense. Likewise, the record does not indicate that any potential defense witnesses could have assisted the defense. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (citing *Wiggins v. Smith*, 539 U.S., at 525, (further investigation excusable where counsel has evidence suggesting it would be fruitless); *Strickland,* at 699, (counsel could "reasonably surmise ... that character and psychological evidence would be of little help"); *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (limited investigation reasonable because all witnesses brought to counsel's attention provided predominantly harmful information).

Counsel's failure to challenge Officer Clark's qualification as an expert on cellular telephone communications and agreement that the prosecutor did not need to fly in a witness from Kansas in order to authenticate business telephone records from Sprint did not amount to the denial of the effective assistance of counsel under the two-prong *Strickland* test. The record

fails to reflect that the prosecution would have been unable to authenticate the Sprint telephone records, or produce a witness in order to do so:

> [O]ur research would indicate that we could get those records in as self-authenticating, as Sprint has sent us a certificate of authenticity and a certificate saying these records are kept in the ordinary course of business.
>
> However, to be safe, we are also going to bring in a person from Kansas where they're located, fly them in to say those very things. Mr. Armengau has agreed to stipulate as to the authenticity of those records and that they are kept in the usual course of business so that we do not need to bring in that business keeper from Kansas City.
>
> COURT: So you're not bringing the Kansas person in, correct?
>
> PROSECUTOR: . . . that is the agreement of the parties.

*Trial Transcript, Volume I* (ECF No. 7-2, PageID# 518.) Clark had undergone training from 2010 to 2011 on cellular phones and cell phone tower from the FBI. *Trial Transcript, Volume V* (ECF No. 7-6, PageID# 1100-1101.) He attended a 40 hour course in 2012 in Indiana on cell phone investigation technology with the Public Agency Training Counsel. (PageID# 1101.) He attended three courses with the National White Collar Crime Center, all on cell phone technology and data recovery. (*Id*.) Additionally, in 2013, he took another cell phone technology course presented by a detective from the FBI, and had attended a second course on cell phone technology and internet investigations through Mobile Forensic Challenges on IOS and Android. (PageID# 1102.) He had previously testified about cell phone technology in Delaware and Fairfield counties, the Franklin County Grand Jury, and the Franklin County Juvenile Court. (*Id*.) He had previously been found to be an expert witness in this area in Delaware County and Fairfield County. (PageID# 1103.) He conducted cell phone technology forensics for the Columbus Police Department. (PageID# 1104.) It appears unlikely that the

trial court would have sustained an objection to Clark's qualification as an expert witness or stricken Clark's testimony on this basis.

Further, and contrary to Petitioner's allegation here, the record reflects that counsel moved for a judgment of acquittal on all charges at the close of the State's case. *Trial Transcript, Volume VI* (ECF No. 7-7, PageID# 1485-86.) The trial court dismissed Counts 78 and 79. (PageID# 1493.) However, the trial court rejected the motion as it applied to the remaining charges against Petitioner, despite counsel's argument that the charges involving Bart Jefferson should be dismissed in view of Jefferson's description of the perpetrator. (PageID# 1488-93.) Therefore, counsel did not act in a constitutionally unreasonable manner in this regard.

Petitioner claims that his attorney improperly failed to object to admission of State's Exhibit D-2, and failed to review cellular telephone records that had been prepared by Detective Clark. Exhibit D-2 referred to the disk of the telephone records that Clark obtained from Sprint. *Trial Transcript, Volume V* (ECF No. 7-6, PageID# 1129.) Clark testified at length regarding his analysis of these phone records. Petitioner does not indicate, and the record does not reflect, the manner in which such information would have been inadmissible under Ohio law. The trial court provided printed copies of the material contained in Exhibit D-2 to the jury during deliberations. *Trial Transcript, Volume VII* (ECF No. 7-8, PageID# 1650.) Defense counsel indicated that he knew "exactly" what the evidence entailed. (PageID# 1651.) Defense counsel cross-examined Clark regarding his analysis. *Trial Transcript, Volume V* (ECF No. 7-6, PageID# 1210-1246.) The record does not reflect that counsel performed in a constitutionally ineffective manner in regard to State's Exhibit D-2. The record likewise does not reflect that

Petitioner can establish prejudice, as that term is defined under *Strickland*, based on defense counsel's failure to object to the keeping of trial exhibits.

Similarly, the Court is not persuaded that counsel acted in a constitutionally unreasonable manner by making a strategic choice to stipulate to certain facts indicating that the various robberies charged had taken place. The State would not have had difficulty in establishing undisputed facts regarding the occurrence of the robberies charged. The stipulations in no way prevented counsel from arguing that the State nonetheless could not establish Petitioner's identify as the perpetrator of the various robberies charged. Notably, the jury found Petitioner not guilty of charges related to six other robberies. *Judgment Entry* (ECF No. 7-1, PageID# 255.) By agreeing to stipulate to facts indicating that the robberies had occurred, counsel prevented lengthy testimony, and could instead focus the jury's attention on this pivotal issue in the case – *i.e.*, that being whether the State could establish Petitioner's identity as the perpetrator of the offenses charged, in view of the lack of any eyewitness identification or physical evidence prior to the Red Robin robbery. Cross-examination of the prosecution's witnesses would have done little to affect such defense. Further, and despite counsel's stipulations, the State nonetheless presented the testimony of alleged victims, whom counsel was able to cross-examine regarding their identification. *See, e.g., Trial Transcript, Volume IV* (ECF No. 7-5.) Defense counsel indicated:

> When we agreed to stipulate to a multitude of facts, we did it for two reasons. No. 1, obviously, to streamline this for trial purposes, but, two, also to avoid the state going through what would amount to a dog-and-pony show, having to bring in witnesses to basically testify about the same things.
>
> . . . [O]ne of the. . . bases for having agreed to stipulate to so many facts was the totality of descriptions that was included in the sequence of the incidents. And I think when you have a case such as this where it is circumstantial. . . you're going to focus on. . .

> discrepancies in description. . . .[T]hat's what the case is all about,
> description in identification.

*Trial Transcript, Volume II* (ECF No. 7-3, PageID# 548.)  During opening statement, defense counsel set forth the theory of the defense, *i.e.,* that the prosecution had no evidence linking Petitioner to any of the robberies charged, and that although the State had attempted to tie him to the robberies by use of his cell phone records, other robberies had been taking place throughout Columbus during the same time frame, with victims giving the same general physical description, and the evidence failed to establish Petitioner's guilt.  (PageID# 577-78.)

> [T]he descriptions you're going to get are descriptions that. . . vary
> of the suspects from 20 years old up to 40 years old.
>
> You're going to see the descriptions.  You're going to get some of
> these suspects on some of these robberies are 5 foot 11 to 6 foot 6.
> Some of the descriptions you're going to get of the suspects are
> 180 pounds up to 250 pounds.  They're more than just
> inconsistencies.  I would suggest to you they're impossibilities.

(PageID# 578.)  The fact that this strategy, ultimately, did not succeed does not amount to the constitutionally ineffective performance.  "Indeed, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . .'" *Williams v. Jenkins*, No. 1:15-cv-00567, 2016 WL 2583803, at *13 (N.D. Ohio Feb. 22, 2016) (quoting *Strickland*, 466 U.S. at 690)).

The record does not support Petitioner's claim that the trial court would have granted a motion to sever the charges involving the Red Robin from the other crimes charged.  Ohio Criminal Rule 8(A) provides:

> Joinder of Offenses. Two or more offenses may be charged in the
> same indictment, information or complaint in a separate count for
> each offense if the offenses charged, whether felonies or
> misdemeanors or both, are of the same or similar character, or are
> based on the same act or transaction, or are based on two or more
> acts or transactions connected together or constituting parts of a

> common scheme or plan, or are part of a course of criminal conduct.

"It is a general rule that 'joinder of offenses is favored to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish inconvenience to witnesses.'" *State v. Barstow*, No. 02CA27, 2003 WL 23529694, at *7 (Ohio App. 4th Dist. Dec. 30, 2003) (citations omitted). "Further, the Supreme Court of Ohio has indicated that joinder is to be 'liberally permitted.'" *Id.* (citing *State v. Schaim* (65 Ohio St.3d 51, 58 (1992)). A criminal defendant may seek severance of the charges under Ohio Criminal Rule 14, which provides in relevant part as follows:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.

"Thus, a court is required to sever the charges when prejudice will result from joinder of offenses at trial." *State v. Andrews*. No. 1-05-70, 2006 WL 2044942, at *7 (Ohio App. 3rd Dist. July 24, 2006).

> When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476, 481–482; *Drew v. United States* (C.A.D.C.1964), 331 F.2d 85. If the evidence of other crimes would be admissible at separate trials, any "prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials," and a court need not inquire further. *Drew v. United States*, 331 F.2d at 90. *See United States v. Riley* (C.A.8, 1976), 530 F.2d 767 (inquiry need not proceed further).

*State v. Schaim*, 65 Ohio St.3d at 59. The government argued, and the evidence reflected, that all of the robberies charged occurred in a similar manner, and had been committed by the same individual. Under these circumstances, it does not appear that defense counsel could have successfully obtained a severance of the charges. *See, e.g., State v. Sullivan,* No. 10AP-997, 2011 WL 6202357, at *6-7 (Ohio App. 10th Dist. Dec. 13, 2011) (no severance required on multiple robbery charges which were geographically and temporally linked and followed a similar pattern as evidence of each could have been introduced under Ohio Evidence Rule 404(B)); *State v. Wilson,* No. 10AP-251, 2011 WL 345636, at *5 (Ohio App. 10th Dist. Feb. 1, 2011) (no severance required on multiple robberies committed under similar circumstances) (citations omitted); *State v. Andrews*, 2006 WL 2044942, at *7 (no severance required on robbery charges that occurred on same date, in close proximity, under similar circumstances goes to demonstrate proof of intent and plan); *State v. Payne,* Nos. 02AP-723, 02AP-725, 2003 WL 22128810, at *8 (Ohio App. 10th Dist. Sept. 16, 2003) (no severance required on multiple robberies).

Petitioner maintains that his attorney suffered a conflict of interest in view of the pending criminal charges against him. A criminal defendant has a Sixth Amendment right to conflict-free representation. *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006) (citing *Smith v. Anderson*, 689 F.2d 59, 62-63 (6th Cir. 1982)). A claim that counsel labored under a conflict of interest is at base a claim governed by *Strickland. Ahmed v. Houk*, No. 2:07-cv-658, 2014 WL 2709765, at *25 (S.D. Ohio June 16, 2014) (citing *Brooks v. Bobby*, 660 F.3d 959, 963-64 (6th Cir. 2011). In order to obtain relief, a petitioner must establish that his attorney "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005) (citations omitted). In certain

contexts, prejudice is presumed where counsel labored under an actual conflict of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 487–91 (1978). The presumption of prejudice applies only where the conflict arises from an attorney's representation of multiple concurrent or co-defendants in the same or separate proceedings. *See Ahmed v. Houk*, 2014 WL 2709765, at *25 (citing *Mickens v. Taylor*, 535 U.S. 162, 174–76 (2002); *Satterwhite v. Texas*, 486 U.S. 249, 256–58 (1988); *Jalowiec v. Bradshaw*, 657 F.3d 293, 314–15 (6th Cir. 2011), *McElrath v. Simpson,* 595 F.3d 624, 630–31 (6th Cir. 2010); *Stewart v. Wolfenbarger*, 468 F.3d 338, 350–54 (6th Cir. 2006); *Gillard v. Mitchell*, 445 F.3d 883, 890–91 (6th Cir. 2006); *Whiting v. Burt,* 395 F.3d 602, 617–20 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 705–09 (6th Cir. 2004); *Moss v. United States*, 323 F.3d 445, 460–61 (6th Cir. 2003); *Smith v. Hofbauer*, 312 F.3d 809, 814–16 (6th Cir. 2002)).

That said, "[t]he argument is not frivolous that a defense lawyer within the sights of a targeted criminal prosecution may find his personal interests at odds with his duty to a client." *Reyes-Vejerano v. United States*, 276 F.3d 94, 99 (1st Cir. 2002).

> A lawyer in these circumstance[s], while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client.

*Armienti v. United States*, 234 F.3d 820, 825 (2nd Cir. 2000). The United States Court of Appeals for the Sixth Circuit has held that "[i]t is well-established that a conflict of interest may arise where defense counsel is subject to a criminal investigation." *Moss v. United States,* 323 F.3d 445, 472 (6th Cir. 2003) (citing *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993) (no actual conflict of interest where defense counsel faced state charges and defendant faced federal charges). *See also United States v. Gonzales*, No. 5:08-cr-250, 2013 WL 6191363, at *3

(N.D. Ohio Nov. 26, 2013) ("A conflict of interest will exist if the client and his attorney are being investigated and prosecuted by the same office.")  (citing *Taylor*, 985 F.2d at 844).

> Other circuits that have found an actual conflict under analogous circumstances have also emphasized the fact that the same office was prosecuting or investigating both the attorney and client. *See, e.g., Levy,* 25 F.3d at 156 (2d Cir.1994) (finding actual conflict for several reasons, including attorney's prosecution on unrelated charges by same office prosecuting defendant); *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir.1992) (presuming that an actual conflict may arise when defendant's lawyer is under criminal investigation by the same prosecutor's office, but finding no adverse effect); *United States v. McLain*, 823 F.2d 1457, 1463–64 (11th Cir.1987) (finding actual conflict where attorney was under investigation by the same United States Attorney's office prosecuting the defendant and attorney had interest in prolonging the trial to delay his own indictment), overruled on other grounds as recognized by *United States v. Watson*, 866 F.2d 381, 385 n. 3 (11th Cir.1989).

*United States v. Baker*, 256 F.3d 855, 861-62 (9th Cir. 2001).  However, the Petitioner must establish that an "actual conflict of interest that adversely affected his defense." *Chester v. Horn*, 2013 WL 2256218, at *4 (E.D. Penn. May 22, 2013); *see also United States v. Beasley*, 27 F.Supp.3d 793, 818-19 (E.D. Mich. June 12, 2014) (citing Moss, 323 F.3d at 471-73) (conflict of interest claim fails where the petitioner cannot demonstrate any adverse effect or prejudice as a result of the alleged conflict).  In other words, Petitioner must "demonstrate that there was an adverse impact, which had a probable negative effect on his case." *Chester v. Horn*, 2013 WL 2256218, at *4.  "In doing so, Petitioner must show actual actions, or inactions, that counsel took or failed to take" based on the pending charges against him. *Id.*  As discussed, Petitioner cannot meet this burden here.

Ground D lacks merit.

## Ground E

In ground E, Petitioner asserts that he was denied a fair trial because the jury received articles and information during deliberations that had not been admitted into evidence at trial. The state appellate court rejected this claim as follows:

> The fifth assignment of error argues that the jury was allowed to receive articles and information during deliberations that had not been admitted into evidence. R.C. 2945.35 states:
>
> Upon retiring for deliberation, the jury, at the discretion of the court, may take with it all papers except depositions, and all articles, photographs, and maps which have been offered in evidence. No article or paper identified but not admitted in evidence shall be taken by the jury upon its retirement.
>
> The record shows that video files not admitted into evidence were taken into deliberations but the jury was unable to play them. A piece of evidence taken into deliberations which could not have been prejudicial does not require a reversal. *State v. Graven*, 52 Ohio St.2d 112, 114, 369 N.E.2d 1205 (1977). We do not find any indication in the record that the jury received any articles or information not admitted into evidence.
>
> The fifth assignment of error is overruled.

*State v. Smith*, 2015 WL 872753, at *5. These findings are presumed to be correct. 28 U.S.C. 2254(e). Petitioner has failed to rebut the presumption of correctness afforded to factual findings of the state appellate court. The trial transcript does not indicate that any evidence that had not been submitted at trial was provided to the jury during deliberations. *See Trial Transcript, Volume* (ECF No., PageID# 1628-39.)

Ground E fails to provide a basis for relief.

## Ground F

In ground F, Petitioner asserts that the trial court violated due process by imposing consecutive terms of incarceration on the firearm specifications associated with each robbery

offense.  Respondent argues that this claim is waived, because Petitioner failed to fairly present the claim as one of federal constitutional magnitude to the state appellate court.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Although this fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is nevertheless rooted in principles of federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment.

In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

In presenting this claim to the state appellate court, Petitioner argued only that the trial court had violated state law in imposing consecutive terms of incarceration on the firearm specifications.  He did not present any argument regarding the application of federal law to this claim, refer to the Constitution, allege a violation of his due process rights, or cite Ohio cases employing a federal constitutional analysis in support of this claim. *See Brief of Defendant-*

*Appellant* (ECF No. 7-1, PageID# 327). As discussed, to the extent that Petitioner asserts the alleged violation of state law, this claim does not provide him a basis for relief. 28 U.S.C. § 2254(a). Moreover, the state appellate court addressed the claim only in terms of an alleged violation of state law:

> The sixth assignment of error addresses the sentences imposed as a result of the firearm specification. Smith argues that the firearm specification associated with each robbery was not required to be served consecutively. That the two firearm specifications must be run consecutively but the remaining firearm specifications could run concurrently.
>
> The statutes involving sentences for gun specifications have been modified in recent years. They are now a mixture of mandatory incarceration and incarceration based upon judicial discretion. R.C. 2929.14(B)(1)(a)(ii) states in part: "A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm." (Emphasis sic.) R.C. 2929.14(B)(1)(b) states in part: "[A] court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." R.C. 2929.14(B)(1)(g) states:
>
> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.
>
> In the context of Smith's case, all agree that two three-year gun specifications must be imposed and ordered to be served consecutively. Appellate counsel for Smith argues that the trial court judge mistakenly believed that all the gun specifications had to be imposed to be served consecutively and asserts the trial court judge was wrong based on R.C. 2929.141(B)(1)(g).

> The trial court judge carefully followed the applicable sentencing statutes and imposed a mandatory 72 years of imprisonment for the gun specifications, imposing 6 years for each set of robberies for which Smith was convicted. The applicable statute requires that the gun specifications for each indictment be run consecutively. R.C. 2929.14(C)(1)(a) ("[I]f a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm * * * the offender shall serve any mandatory prison term imposed under either division consecutively.").
>
> The trial court imposed only one year of incarceration for the many RVO specifications and one maximum sentence of 11 years for the aggravated robbery convictions, running all the other sentences concurrent except for the gun specifications and the RVO.
>
> Nothing about the sentence was incorrectly done. The sixth assignment of error is overruled.

*State v. Smith*, 2015 WL 872753, at *5-6.

Thus, this Court finds that Petitioner failed to present this claim to the state courts as a federal constitutional claim. Further, the Court concludes that Petitioner has not established cause for his failure in that regard. Petitioner therefore has waived this court's review of any such federal claim in these proceedings.

Ground F fails to provide a basis for relief.

### Ground G

In ground G, Petitioner asserts that he was denied a fair trial based on cumulative error. This claim fails to provide a basis for relief. "[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005.)) This Court is bound by that ruling. *See id.; Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)) (same).

# Ground H

In ground H, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions, due to the absence of any positive witness identification of him as the perpetrator of the crimes charged, the lack of conclusive DNA or fingerprint evidence, and based on the State's alleged failure to link him to a cellular telephone used during the general time and location of twelve of the robberies charged. The state appellate court rejected Petitioner's claim of insufficiency of the evidence:

> The eighth and ninth assignments of error respectively allege that there was an insufficiency of evidence to sustain the judgments as to the ten robberies for which Smith was convicted and that the convictions were against the manifest weight of the evidence.
>
> When reviewing the sufficiency of the evidence to support a conviction, an appellate court must examine the evidence that, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).
>
> \*\*\*
>
> The analysis of the evidence to address the fourth assignment of error also applies to the eighth and ninth assignments of error. There is no serious question that the 18 aggravated robberies occurred. The kidnapping charges each involved the restraint of people at the restaurant. The robber was armed with a handgun, apparently the same handgun found in Smith's possession. The handgun was operable. Smith had an extensive criminal record which meant he was barred from possessing a firearm, let alone using it to restrain and to rob personnel at closed or closing restaurants. The jury clearly carefully evaluated the evidence

which was sufficient to support convictions as to more charges than the charges which resulted in guilty verdicts.

The evidence was sufficient to support all the charges and specifications. There was no evidence to support a different set of verdicts. . . .

The eighth and ninth assignments of error are overruled.

*State v. Smith*, 2015 WL 872753, at *3-4.

Petitioner was convicted on charges of aggravated robbery and kidnapping with firearm and repeat violent offender specifications[2] on Counts 22, 24, and 25 of the *Indictment*, relating to the February 26, 2012, robbery of the Golden Corral Restaurant on 4750 East Main Street; Counts 28, 30, and 31, relating to the March 7, 2012, robbery of the Chipotle restaurant on 6316 Tussing Road; Count 37, 39-41, relating to the April 4, 2012, robbery of the Bob Evans on 50 Reynoldsburg New Albany Road North; Counts 56, 58-61, relating to the April 23, 2012, robbery of the Logan's Steakhouse on 3969 Morse Crossing; Counts 62, 64-67, relating to the May 7, 2012, robbery of the McDonald's on 3554 South High Street; Counts 77, 79, 80, relating to the May 16, 2012, robbery of the Bob Evans on 6085 Gender Road; Counts 81, 83, 84, relating to the May 30, 2012, robbery of the Applebees on 2755 Brice Road; Counts 85, 87-90, relating to the June 3, 2012, robbery of the Texas Road House on 8440 Lyra Drive; Counts 91, 93, 94, relating to the June 12, 2012, robbery of the Chipotle restaurant on 1960 East Dublin Granville Road; Count 95, 97-100, relating to the June 26, 2012, robbery of the Chipotle restaurant on 1851 Morse Road; Counts 109, 110, 115, 116, relating to the July 12, 2012, robbery of the Golden Corral restaurant on 4750 East Main Street; and Count 117, relating to the July 12, 2012, robbery of the Red Robin restaurant on 3977 Morse Crossing. *Judgment Entry*

---

[2] The *Indictment* charged Petitioner as a repeat violent offender under O.R.C. § 2929.01, based on his prior 2002 aggravated robbery and robbery convictions in the Franklin County Court of Common Pleas. *Indictment* (ECF No. 7-1, PageID# 105-06.)

(ECF No. 7-1, PageID# 253-55.) Petitioner was also convicted on charges of having a weapon while under disability on Counts 127, 128, 130, 132, 133, 135-39, 141, 142. (PageID# 257-58.) The repeat violent offender and having weapon under disability charges were tried to the court. (PageID# 256.) The convictions hinged on the State's ability to connect Petitioner to the robberies of the foregoing restaurants by a masked man with a gun, which was undisputed. It was also undisputed that Petitioner had previously been convicted, on February 7, 2012, of robbery, and on February 8, 2002, of aggravated robbery with a firearm specification. *Trial Transcript, Volume VII* (ECF No. 7-8, PageID# 1677.)

In fact, the parties stipulated that, on February 26, 2012, a person described as a black male, 6 foot 3 inches tall and around 190 to 220 pounds entered the Golden Corral on 4750 East Main Street at 10:43 p.m. after the business had closed. Witnesses described him as wearing a black hooded jacket, a dark knit hat, a black bandana covering his mouth and nose, and blue plastic or latex gloves. He confronted Alex Ramirez at gunpoint when Ramirez went out to the dumpster. He forced Ramirez back into the restaurant, where he also confronted employees Renaldo Finoti and Briana Guynes at gunpoint. He forced them to the north side of the dining area, where the manager, Mamadou Moussa was located, and into the office. He ordered Finoti and Guynes to lay on the floor while Moussa opened the safe, took cash from the cash register tills located in the safe, and fled. (PageID# 667-68.)

On March 7, 2012, a person described as a black male in his late 20s, 6 foot 1 to 6 foot 2 inches tall, muscular build, brown skin, wearing a green hooded jacket, green mask across the lower portion of his face, black gloves, and black shoes with the word, "creative", written on them, approached Miguel Disla in the parking lot of the Chipotle on 6316 Tussing Road at 12:20 a.m. after the business had closed. With a handgun, the man forced Disla into the back room of

the business, where employee Brandon Simon was working. He ordered Disla to the floor and ordered Simon to open the restaurant safe. He took cash from the safe and fled out of the back door. *Trial Transcript, Volume III* (ECF No. 7-4, PageID# 727-28.)

On April 4, 2012, a black male wearing a hoodie, mask, gray gloves, black jeans, and black tennis shoes, with a white, red, and orange-checkered shirt under the hoodie, approached employees of the Bob Evans located at 50 Reynoldsburg-New Albany Road at approximately 11:30 p.m. after the business had closed. He confronted the store manager, Kimberly Parsons, and employee Michael Bownman in the parking lot as they approached their cars. He displayed a black handgun, and ordered them back to the restaurant, where he confronted Lawan Hamilton, who was standing at the front door. He forced them back into the restaurant and into the office, where he ordered Bowman and Hamilton to lie on the ground, and ordered Parsons to open the safe. He took cash from the safe, demanded cash from Parsons, Bowman, and Hamilton, and fled. Parsons described the perpetrator as a male of unknown race, 6 foot 1 inch tall, stocky, wearing a hoodie, a mask, black jeans, gray utility gloves, and a white, red, and orange checkered shirt under the hoodie. Bowman described the perpetrator as a black male, medium complexion and medium build, 6 foot 3 inches to 6 foot 4 inches tall, wearing all black, black jeans, black hoodie, black shoes, and a mask. Hamilton described him as a black male wearing a big husky coat that was black with a reddish checkered shirt on underneath with black 501 Levi jeans. *Trial Transcript, Volume III* (ECF No. 7-4, PageID# 755-57.)

On April 23, 2012, a person described as a black male, aged 25 to 40, 6 feet tall, 210 pounds, wearing a black hooded jacket, black ski mask, black pants, and black gloves, entered the front door of the Logan's Roadhouse on 3969 Morse Crossing at approximately 10:45 p.m., after the business had closed. He confronted employee Nicole Johns in the bar area, grabbed her,

stuck a gun against her rib cage, and ordered her to take him to the office. He confronted kitchen employees Jesus Ishibel and Erasmo Amvares in the kitchen area and forced Eshibel on to the ground. Amvares fled from the store while the man was looking elsewhere. The man confronted manager Pamela Shew in the office. While displaying a handgun, he demanded cash from the safe and ordered Johns, Eshibel, and Shew into the freezer and fled. *Trial Transcript, Volume IV* (ECF No. 7-5, PageID# 1045-46.)

On May 7, 2012, a person described as a tall black male wearing jeans, a hoodie, and a ski mask, displaying a black handgun pushed his way into the rear door of the McDonald's restaurant located on 3554 South High Street, at approximately 4:15 a.m., after the business had closed. The man confronted the manager, Tammy Shoemaker, who had opened the rear door for a bun delivery, stuck a black handgun into her side and forced her into the office in the rear of the store. He then forced her to open the safe, took a bank bag containing cash, and fled. Kelly Neeshan and Angela Wolford, employees of the restaurant, observed the incident. Shoemaker described the perpetrator as a black male, 6 feet to 6 feet 2 inches tall, wearing a black winter ski mask which exposed only his eyes and mouth, a black zip-up hoodie, and black pants. She said he had a deep voice and carried a black automatic handgun, possibly a .45. Jacobs and Neeshan provided similar descriptions of the man. *Transcript, Volume III* (ECF No. 7-4, PageID# 846-47.)

On May 16, 2012, a black male, 6 foot 2 inches to 6 foot 4 inches tall, with a stocky build and wearing a black zip-up hooded sweatshirt, red shirt, dark pants, and black shoes, entered the open rear door of Bob Evans restaurant on 6085 Gender road at approximately 11:30 p.m. after the business had closed. The man confronted the GFS delivery driver, Kyle Murnane, and while brandishing a handgun, ordered Murnane to call the manager, Adam Saddler, to come out of the

office.  Once Saddler opened the office door, the man put Murnane in a headlock and ordered Murnane and Saddler to the ground.  He unlocked the safe and removed the cash register drawers, taking cash from the drawers.  He then ordered Saddler and Murnane into the dry food storage room, and made them empty their pockets, but he did not take any property from him.  He then fled the premises.

On May 30, 2012, a black male, 6 foot 4 to 6 foot 6 wearing black jeans, a dark hooded sweatshirt, and a scarf over his face, armed with a black handgun, entered the open front door of the Applebee's restaurant on 2755 Brice Road, at approximately 2 a.m. after business had closed.  He confronted the manager, Angel Thomas, in the kitchen area, pointed the gun at Thomas, and ordered Thomas into the office, where the manager, Sally Armstead, was working.  He then ordered Thomas to lay on the ground while Armstead opened the safe.  When Armstead told him that she did not have the combination, Thomas got up and opened the safe.  The man took the cash and fled.  Thomas indicated that he wore black gloves.  No video of the robbery was available. *Trial Transcript, Volume IV* (ECF No. 7-5, PageID# 938-39.)

On June 3, 2012, at approximately 12:58 a.m., a black male displaying a firearm ordered Salvado Garcia Cruz and Sergio Rodriguez, employees of the Texas Roadhouse restaurant on 8440 Lyra Drive back into the restaurant and into the office when they were taking out the trash.  He also forced the assistant manager, Trooy Rood, into the office at gunpoint.  Once there, he forced Rebekah Ghenco to open the safe and cash box, and ordered Cruz, Rodriguez, and Rood onto the ground.  He took cash and shut the employees in the walk-in freezer.  A surveillance video was admitted providing a depiction of the robbery.  (PageID# 976-78.)

On June 12, 2012, at approximately 12:30 a.m. at the Chipotle restaurant on 1960 East Dublin Granville Road, a black man confronted employees Jamie Watkins and Veridian Chang

as they were leaving the business after closing the restaurant. He displayed a firearm and ordered them back into the office of the restaurant and into the bathroom. Jamie Watkins stated that he wore gloves. Photographs and a video surveillance tape were admitted into evidence depicting the robbery. (PageID# 1042-44.)

On June 26, 2012, at approximately 12:40 a.m., at the Chipotle restaurant on 1851 Morse Road, a black man confronted John Van Malderen, a delivery truck driver making a delivery after the restaurant had closed as he was exiting the restaurant. He displayed a firearm and ordered Van Malderen and two employees, Hanna woods and Jason Quin, into the office of the restaurant. He forced Woods to open the safe and give him the money inside. He also ordered another employee present in the business, Josh Boals, into the office. He made them lie on the floor. Woods thought the man was wearing gloves. Quinn said he wore gloves. A video surveillance video depicting the robbery was admitted into evidence. (PageID# 1042-44.)

On July 12, 2012, a black man, approximately 6 foot 4 and 225 pounds, wearing a red hoodie and a white t-shirt underneath it, with a black ski mask, black gloves, black sweatpants, and brandishing a black semiautomatic handgun, entered the open doors of the Golden Corral on 4750 East Main Street at approximately 12:36 a.m., after the business had closed. He confronted the carpet cleaners, Robert Jarrett and Bart Jefferson, and demanded to know where the manager was. When Jefferson told him that the manager was not in the store, he demanded property from Jefferson, ordered both, at gunpoint, into a utility closet, and fled.

Sydney Mfula testified that, on that same date, he was working for a hood cleaning company at the Red Robin restaurant on Morse Crossing after the restaurant had closed between approximately 2 and 3 a.m. *Trial Transcript, Volume VI* (ECF No. 7-7, PageID# 1308-11.) He was working with a man named Mike. (PageID# 1312.) Mike said that someone was pointing a

gun at him and they were being robbed.  (PageID# 1313.)  He saw a man with a gun.  The man told them to find the manager.  (PageID# 1315.)  Mfula was able to escape and ran into the parking lot.  (PageID# 1318.)  He saw a police car and told the officer that they were being robbed.  (PageID# 1319-20.)  The robber wore a Ninja style mask and hood, so he could not see his face.  (PageID# 1320-21.)  The prosecutor played a video tape of the robbery.  (PageID# 1329.)  The armed man wore a black sleeveless T-shirt and a red hood.  (PageID# 1332-34.)

Officer Mark Schroeder testified that, on July 12, 2012, at 2:00 a.m. while he was working a special duty job at the Easton Town Center, two men ran up and told him that the Red Robin across the street was being robbed by a heavy-set black man with a gun.  *Trial Transcript, Volume V* (ECF No. 7-8, PageID# 1249-52.)  A woman driving a Ford Mustang told Schroeder she had seen someone running southbound through the parking lot.  (PageID# 1255-56.)  Schroeder proceeded in that direction, where he found Officer Bill Lang and Officer Swindleman with the Petitioner in custody.  They placed Petitioner in the back of Schroeder's cruiser. (PageID# 1257.)

Officer Terry Bond testified that on that same date, he responded to a call on a robbery in progress at the Red Robin at Morse Crossing.  (PageID# 1262.)  He observed Petitioner run out from the tree line towards a car that had stopped for a red light.  Petitioner attempted to open the door of the car, but the car drove off, and Petitioner ran back towards the tree line.  Petitioner refused to comply with Bond's order to stop, and a chase ensued.  (PageID# 1264-65.)  Eventually, Bond and Officer Lang they were able to get Petitioner into custody.  (PageID# 1265.)  They found a black shirt in the roadway, and a red hoodie in the area where he had fallen. (PageID# 1265-66.)  Another black shirt lay on top of the red hoodie and there was a gun inside.

(PageID# 1268, 1271.)  Police also found two black gloves in proximity to the Petitioner with the word, "CAT" on them.  (PageID# 1283-84.)

DNA evidence on the gun indicated that Petitioner could not be excluded as a contributor.  *Trial Transcript, Volume VI* (ECF No. 7-7, PageID# 1354-59.)  In the African-American Community, there was a one in 30,000 chance that the DNA on the firearm belonged to someone other than the Petitioner.  (PageID# 1359-60.)  The DNA on the black sleeveless shirt matched the DNA of the Petitioner.  (PageID# 1363-64.)  DNA of the red hoodie matched the DNA of the Petitioner.  (PageID# 1388.)

Petitioner provided his phone number, *i.e.,* 740-600-5121, to Officer Jill Brady in March 2012 and June 2012.  *Trial Transcript, Volume V* (ECF No. 7-6, PageID# 1094.)  Records indicated that the phone had received over 4,000 calls between February and July 2012 from a phone belonging to Petitioner's girlfriend, Perri Mackey.  (PageID# 1206.)  Officer Thomas Clark, who testified as an expert in cell phone technology, indicated that data recovery from a cellular phone can show the general location of the phone at the time calls were placed.  (PageID# 1109-10.)  The phone number belonging to the Petitioner was a Boost Mobile telephone.  (PageID# 1126.)  A person buying a Boost Mobile phone does not need to provide any personal identifying information.  (*Id.*)  Clark obtained the location, dates, and times of sixteen robberies and analyzed the calls to determine the location of that phone within the 60 minutes preceding and subsequent to the robberies.  (PageID# 1145.)  The records indicated that Petitioner's phone had been used during times and locations of 12 of the 16 robberies he had been asked to analyze.  (PageID# 1203.)  On February 26, 2012, a call was placed within seven minutes of the Golden Corral robbery within the same geographic area.  (PageID# 1163-64.)  On March 7, 2012, four calls were placed between 12:27 a.m. and 12:33 a.m. in the area of I 270 and

East Main Street, within minutes of the Chipotle robbery. (PageID# 1165-66.) On April 4, 2012, two calls were made, one at 9:32 p.m., and one at 11:21 p.m., within six minutes of the robbery of the Bob Evans, and traveling in the area of the restaurant that had been robbed. (PageID# 1173-75, 1177.) On April 23, 2012, the phone received an inbound call at 10:31 p.m. in the area of Logan's Steakhouse robbery. (PageID# 1181-82.) On May 7, 2012, a call was received at 4:25 a.m. through usage of a cell phone tower in the area of the McDonald's robbery on South High Street. (PageID# 1183-85.) On May 16, 2012, two calls were made, one at 11:30 p.m., and one at 11:46 p.m. on the "primary tower" covering the area of the Bob Evans robbed on Gender Road. (PageID# 1189-90.) On May 30, 2012, the phone received or made four calls between 2:04 and 2:05 a.m., moments after the reported time of the Applebee's robbery using a cell phone tower in the same geographical area as the restaurant was located. (PageID# 1191-92.) On June 3, 2012, the date of the Texas Roadhouse robbery, no calls were placed or received. (PageID# 1194.) On June 26, 2012, the date of the Chipotle robbery, no calls were made. (PageID# 1195.) Clark did not analyze any data for July 12, 2012, the date of the Golden Corral robbery on 4750 East Main Street, and the Red Robin robbery. (PageID# 1196.)

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume—even if it does not

appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson,* at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so here.

In sum, the prosecution tied Petitioner to the Red Robin robbery, based on the witness description of his clothing and the videotape of the robbery. He was seen fleeing immediately following the crime, and his DNA matched the clothing of found in close proximity to him, which matched that of the robber. Further, the *modus operandi* of all of the robberies matched in great detail. Witnesses consistently described the restaurant robber as a black man wearing dark clothing, gloves, a hood, and a mask. He would enter the premises at gunpoint at the close of business and order the employees onto the ground, demanding the opening of the store safe. Moreover, evidence indicated that Petitioner's cellular phone had been used in close proximity to the restaurants that had been robbed, during the times and dates at issue. In view of this evidence, the similarity of the offenses charged, and the robber's use of a "consistent and unique modus operandi" in his commission of the offenses charged, this Court does not conclude that

the state appellate court's decision is unreasonable so as to justify federal habeas corpus relief. *See United States v. Bowers*, 811 F.3d 412, 426 (11th Cir. 2016) (citing *United States v. Whatley*, 719 F.3d 1206, 1217-19 (11th Cir. 2013). Circumstantial evidence, such as use of the same *modus operandi*, may constitute sufficient evidence to sustain a conviction. *See Price v. Warren*, No. 12-2238, 2015 WL 3970124, at *7 (D. N.J. June 30, 2015) (citing *United States v. Cobb*, 397 F. App'x 128, 135–36 (6th Cir. 2010) (denying insufficiency of the evidence claim for Huntington Bank robbery where the robbery had a similar *modus operandi* to robbery of Chase Bank and DNA evidence supported the conviction); *Dixon v. Tampkins*, No. 12–2821, 2013 WL 1246751, at *9 (C.D. Cal. Feb.11, 2013) ("Based on *modus-operandi* evidence from Petitioner's other convictions, a rational fact finder could have inferred that he committed the four crimes in question.") (citing *United States v. Momeni*, 991 F.2d 493, 494 (9th Cir.1993); *United States v. Hirokawa*, 342 F. App'x 242, 248–49 (9th Cir.2009)); *report and recommendation adopted by*, 2013 WL 1245981 (C.D. Cal. March 27, 2013); *see also United States v. Moore*, 115 F.3d 1348, 1364 (7th Cir. 1997) (circumstantial evidence consisting of use of the same *modus operandi*, when considered in conjunction with direct evidence, provided sufficient evidence to sustain robbery conviction); *Calkins v. Soto*, No. 13-1761-DOC (DTB), 2014 WL 1224795 (C.D. Cal. March 21, 2014) (use of same *modus operandi* constituted circumstantial evidence of guilt).

Ground H fails to provide a basis for relief.

## Ground I

In ground I, Petitioner asserts that his convictions on aggravated robbery and kidnapping should have been merged at sentencing, because he committed a single act with a single state of mind. The state appellate court denied this claim, reasoning as follows:

> The tenth assignment of error alleges that the trial court failed to abide by R.C. 2941.25(A), which reads:

Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

Appellate counsel argues that Smith is committing a single act with a single state of mind, to rob the restaurant, arguing that both the aggravated robberies and kidnappings occurred as one course of conduct.

The Supreme Court has made clear the guidelines in establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B):

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus.

Although in some cases aggravated robbery and kidnapping can constitute allied offenses of similar import, the restraint imposed on the victims here was more than merely incidental to an aggravated robbery. Victims were restrained for more than a few seconds. Some victims were moved to other rooms. Some victims were restrained after the theft portion of the robbery was completed.

We also note that the trial court judge ordered the aggravated robbery sentences to be served concurrently with each other and

> concurrently with the kidnapping sentences. The "merger" argued
> in this assignment of error would have no effect on Smith's time of
> incarceration for his crime spree.
>
> The tenth assignment of error is overruled.

*State v. Smith*, 2015 WL 872753, at *7.

Although the Ohio Court of Appeals' limited its analysis to application of Ohio's allied offenses statute, O.R.C. § 2941.25, that analysis is "entirely dispositive" of a claim under the Double Jeopardy Clause, and the state court's decision therefore obtains a deferential standard of review under the AEDPA. *See Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014); *see also Riley v. Buchanan*, No. 2:14-cv-02522, 2016 WL 827994, at *9 (S.D. Ohio March 3, 2016) (noting that Ohio law in this regard is derived from the same concerns as those of the Double Jeopardy Clause and applying the deferential standard of review under the AEDPA) (citations omitted).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The traditional test for a double jeopardy claim is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger,* the critical question is whether, in reality, the multiple charges constitute the same offense. Thus,

the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

However, "[w]here two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so." *Bates v. Crutchfield*, 2016 WL 7188569, at *5 (S.D. Ohio Dec. 12, 2016) (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)). Thus, "[e]ven if the crimes are the same under Blockburger, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) (citing *Johnson,* 467 U.S. at 499 n. 8; *Hunter,* 459 U.S. at 368–69). "Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Grable v. Turner,* No. 3:16-cv-273, 2016 WL 7439420, at *6 (S.D. Ohio Dec. 27, 2016) (quoting *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Id.* (quoting *Volpe v. Trim,* 708 F.3d 688 (6th Cir. 2013) (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).

In view of the facts of this case, and applying the test set forth in *Blockburger*, this Court is not persuaded that the state appellate court's conclusion that evidence reflected separate criminal acts due to the prolonged restraint and movement of the victims and that Petitioner's convictions therefore did not violate the Double Jeopardy Clause was unreasonable so as to

justify federal habeas corpus relief. 28 U.S.C. § 2254(d), (e); s*ee Spence v. Sheets,* 675 F.Supp.2d 792, 825 (S.D. Ohio Dec. 18, 2009) (citing *Jones v. Baker*, 35 F.3d 566, unpublished, 1994 WL 464191 (6th Cir. August 26, 1994) (no double jeopardy violation where kidnapping not "merely incidental" to aggravated robbery and involved substantial restraint of the victim); *Watkins v. Schotten*, 103 F.3d 132, unpublished, 1996 WL 690159 (6th Cir. Nov. 27, 1996) (no double jeopardy violation on aggravated robbery and kidnapping convictions where the offenses were committed separately with separate animus and since the crimes have separate elements); *Spence v. Sheets*, 675 F.Supp.2d 792, 825 (S.D. Ohio 2009) (state appellate court's conclusion that evidence reflected separate criminal acts and that petitioner's convictions therefore did not violate the Double Jeopardy Clause not unreasonable so as to justify federal habeas corpus relief); *McKitrick v. Smith*, No. 3:08CV597, 2009 WL 1067321 (N.D. Ohio April 21, 2009) (trial court's finding that petitioner had "separate animi" for robbery and kidnapping is due deference in habeas proceedings and therefore petitioner's convictions did not violate *Blockburger*). *See also Grable v. Turner,* No. 3:16-cv-273, 2016 WL 7439420, at *6 (S.D. Ohio Dec. 27, 2016) (cumulative punishment for kidnapping and aggravated robbery does not violate the Double Jeopardy Clause); Petitioner has failed to establish that the state appellate court's decision rejecting his Double Jeopardy Claim contravened or unreasonably applied federal law or resulted in an unreasonable determination of the facts in light of the evidence presented.

Ground I fails to provide a basis for relief.

## Conclusion and Disposition

Petitioner's *Motion to Amend/Correct* (ECF No. 10), to include additional arguments in support of his claims is **GRANTED**. In light of the Amendment, Petitioner's *Motion to Add Affidavit* (ECF No. 14), to include an affidavit from his replacement appellate counsel is **DENIED AS MOOT.** Petitioner's *Motion for Judicial Notice* (ECF No. 12), is **GRANED IN PART AND DENIED IN PART**. Petitioner's unopposed *Motion to Expand/Complete Record Pursuant to Rule 5 of the Rules governing Section 2254 Cases* (ECF No. 23), to include a copy of the transcripts of pre-trial proceedings is **GRANTED**.

For the reasons fully set forth above, this action is hereby **DISMISSED**. The Clerk is **DIRECTED** to enter judgment in favor of Respondent.

## Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(B), the Court must also assess whether to issue a certificate of appealability. Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts states that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of habeas corpus in federal court holds no automatic right to appeal from an adverse decision by a district court." *Jordan v. Fisher*, —— U.S. ——. ——, 135 S.Ct. 2647, 2650 (2015); 28 U.S.C. § 2253(c)(1) (requiring a habeas petitioner to obtain a certificate of appealability in order to appeal.) The petitioner must establish the substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880 (1983) (same); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (recognizing codification of *Barefoot* in 28 U.S.C. § 2253(c)(2)). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*, 529 U.S. at 484 (quoting *Barefoot*, 463 U.S., at 893 n.4).

Where the Court dismisses a claim on procedural grounds, however, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Thus, there are two components to determining whether a certificate of appealability should issue when a claim is dismissed on procedural grounds: "one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id*. at 485. The court may first "resolve the issue whose answer is more apparent from the record and arguments." *Id*.

Upon review of the record and under the circumstances of this case, the Court is persuaded that reasonable jurists would debate whether Petitioner's claims should have been resolved differently or whether the Court correctly dismissed his claims as procedurally defaulted. The Court therefore **GRANTS** Petitioner's request for a certificate of appealability and certifies the following issues for appeal:

> 1. Was Petitioner denied the effective assistance of counsel?
>
> 2. Was the evidence constitutionally sufficient to sustain all of Petitioner's convictions?
>
> 3. Did Petitioner waive his claim that the trial court improperly permitted stipulations that violated the Confrontation Clause without first determining whether he knowingly, intelligently, and voluntarily waived that right on the basis of invited error?

**IT IS SO ORDERED**.

_s/ George C. Smith_
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**